IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


NATASHA GENENE HODGE,

                    Plaintiff,

          v.                         CASE NO.  12-3228-SAC

TOPEKA CORRECTIONAL
FACILITY, et al.,

                    Defendants.

<u>MEMORANDUM AND ORDER</u>

     This pro se civil complaint was filed pursuant to 42 U.S.C. §
1983 by an inmate of the Topeka Correctional Facility, Topeka, Kansas
(TCF).  Plaintiff sues the TCF; the Kansas Department of Corrections
(KDOC); and Douglas W. Burris, Secretary of Corrections Designee,
KDOC.  She also sues several persons employed at the TCF: Deb Mayo,
Counselor; Linda Hull-Viera, Unit Manager; Hope Cooper, Warden;
Colene Fischli, Deputy Warden; Andrea Ballhagen, Facility Services
Administrator; and Allen Morgan, Head of EAI.  Having reviewed all
materials filed, the court assesses an initial partial filing fee.
In addition, plaintiff is required to cure the deficiencies found
upon screening and discussed herein or she will suffer dismissal of
part of all of her complaint.


**I.  ASSESSMENT OF INITIAL PARTIAL FILING FEE**

     The statutory fee for filing a civil rights complaint is

1

$350.00.   Plaintiff has submitted a motion to proceed without prepayment of fees and attached an Inmate Account Statement in support as statutorily mandated.   Plaintiff is reminded that under 28 U.S.C. § 1915(b)(1), a plaintiff granted such leave is not relieved of the obligation to pay the full fee for filing a civil action. Instead, it merely permits an inmate to proceed without prepayment of the full fee, and to pay the filing fee over time through payments deducted automatically from her or his inmate trust fund account as authorized by § 1915(b)(2).   Furthermore, § 1915(b)(1), requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposit or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action.   Having examined the records of plaintiff's account, the court finds the average monthly deposit during the relevant period was $262.24, and the average monthly balance was $ 156.18.   The court therefore assesses an initial partial filing fee of $52.00, twenty percent of the average monthly deposit, rounded to the lower half dollar.   Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to the court.   Failure to submit the initial fee in the time allotted may result in dismissal of this action without further notice.

Plaintiff asks in this motion to have the filing fee paid from her Forced Savings Account.   This request is denied because

plaintiff provides no factual basis or legal authority that would allow this court to order that the filing fee in this case be paid from this particular account.

## II.  AMENDED COMPLAINT (DOC. 1 & DOC. 4)

Plaintiff has attached grievances and administrative responses to her complaint.  These attachments are considered as part of the complaint.  In addition, plaintiff has filed a single-page document entitled "Amended Complaint" (Doc. 4).  A plaintiff may amend her or his complaint once without leave of court.  However, a plaintiff does not properly amend a complaint by filing a pleading that only sets forth those claims or parties she wants to add to the original complaint.  Instead, in order to properly add claims or parties, a plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.).  Under Rule 15, the plaintiff must prepare and submit a complete Amended Complaint.  An "Amended Complaint" is not automatically combined with the original complaint.  Rather, an Amended Complaint completely supersedes the original complaint. Consequently, in the Amended Complaint plaintiff must name all defendants and set forth all claims that the plaintiff intends to pursue in the action including any that are to be retained from the original complaint.  Any claims not actually set forth in an Amended Complaint are no longer before the court.

The "Amended Complaint" (Doc. 4) filed in this case is simple

in that plaintiff seeks to add several persons as defendants and to sue all defendants in their individual and official capacities. Her clear intent is for the Amended Complaint to serve as an addendum to rather than a replacement for the original complaint. This court ordinarily requires the filing of a complete new Amended Complaint because problems can arise from having two documents that must be read, served, and answered as the complaint. Under the circumstances of this case, the court decides instead to liberally construe plaintiff's "Amended Complaint" (Doc. 4) to incorporate the original complaint (Doc. 1). However, plaintiff is forewarned that if she hereafter seeks to submit a Second Amended Complaint she must fully comply with Rule 15 by filing a Motion to Amend with a complete Second Amended Complaint on forms attached.

## III.   FACTUAL ALLEGATIONS AND CLAIMS

Plaintiff submitted her original complaint upon court-approved forms, but she did not properly utilize the forms. As Count I, plaintiff claims violation of her right to be free of abuse and harassment. As Count II, she claims violation of her right to be free from humiliation by prison staff. As Count III plaintiff claims a violation of her "right to not be viewed on camera monitors without (her knowledge) and/or recorded visually in the reasonable privacy of (her) room." Plaintiff states no facts in support of these three counts in the spaces provided for supporting facts. Instead, she

4

simply writes in those spaces: "Please see attached."  Attached to her complaint are numerous exhibits, none of which is designated as the facts alleged in support of a particular ground in the complaint. Consequently, the court has parsed plaintiff's attachments in search of the supporting facts.

The first attachment to plaintiff's original complaint (Doc. 1) contains no facts to support her claims.  The second attachment is a single-page statement by plaintiff that is entitled "Sexual harassment/lewd acts Staff negligence."  While this attachment makes no reference to any of the three counts, the allegations therein appear to be facts in support of plaintiff's Count I claim of harassment and lewd acts.  After this statement, grievances and administrative responses dated August and September 2012 are attached that are relevant to plaintiff's harassment claim.  Next, plaintiff includes her summaries of two general orders and two IMPPs, which she has cited as legal support for her claims.  Then, plaintiff includes another single-page statement entitled "Intrusive Cameras," in which she apparently alleges the facts in support of her Count II and Count III claims of humiliation and violation of privacy.

Plaintiff's allegations and exhibits clearly complain about two distinct factual scenarios.  First, plaintiff alleges that another inmate subjected her to lewd acts and sexual harassment and claims that defendants failed to prevent the inmate's continued misconduct.

Second, plaintiff alleges that "intrusive cameras" in her cell allowed her to be viewed on a security monitor as she was dressing and undressing, and claims this was inappropriate and humiliating. The court construes the Amended Complaint as raising these two grounds.

In support of her first claim, plaintiff alleges the following. On June 18, 2012, Ms. Hodge reported to her counselor defendant Deb Mayo that she was being exposed to unwanted touching and frequent masturbation in her presence by her bunkmate LD. She told LD to stop to no avail. She reported LD's continued behavior to Mayo and to defendant Unit Team Manager Linda Hull-Viera. Mayo and Hull-Viera viewed it as "simple misconduct." In her attached exhibits "Inmate Grievance Form" and "Appeal of Grievance to Secretary," plaintiff stated that on June 27 Mayo held a "conflict resolution meeting" in plaintiff's cell with the four cellmates present at which her cellmates also reported having seen LD masturbate and "dig in" her rectum. Plaintiff requested a room change, but no action was taken. Additional incidents occurred in July and were reported to Mayo, but plaintiff was not separated from LD.

Plaintiff states that under "PREA" all reports of sexual harassment, contact, or activity must be investigated, and "PREA protocol" must be followed. Hull-Viera told plaintiff that she had not instituted a room reassignment because "she did not think the 'unwanted touching' was a big deal." Hull-Viera told defendant

Allen Morgan that "she did not feel this was a PREA situation."  Ms. Hodge was upset and went to her Mental Health (MH) counselor.  Mental Health and medical staff handled plaintiff's claims "as PREA from the beginning."  Her MH counselor immediately reported LD's behavior to "EAI."  When medical staff learned of her situation, they called Ms. Hodge in for a "PREA protocol exam" on July 11 or 12.  Officer Filby was present and asked for her statement.  Her MH counselor's report was "dismissed by EAI" and never investigated.  The EAI interviewed Ms. Hodge on September 19, 2012.  In her complaint, plaintiff states that she was not moved out of the living unit with LD until October 16, 2012, and then only because she threatened violence against LD the next time LD touched her.  However, in her exhibited grievance Ms. Hodge made the contrary statement that she "was finally moved July 1."

Plaintiff complains that "TCF staff" never took her claims seriously and "repeatedly refused to remove" her, and that action taken only after she had filed "Joint Committee claims"[1] was not timely considering the seriousness of her claims.  She alleges that defendants Fischli, Ballhagen, Morgan, and "Security Staff" were "contacted about the staff negligence" but none responded.

---

[1]     To the question in her complaint about other lawsuits based on the same facts, plaintiff responds that she has filed two claims seeking monetary relief before the "Joint Committee on Special Claims Against the State" that are still pending. She describes the issues raised in those claims as "staff negligence in sexual harassment/lewd acts complaints and "intrusive cameras" mounted for 2 years before her grievance "got them corrected."

Plaintiff exhibits the September 6, 2012 response of defendant Burris to her grievance appeal stating that he forwarded her complaint to the appropriate staff for review, which turned out to be Warden Cooper.  Plaintiff also claims that she was "forced to risk (her) good time, program, and custody" to obtain a room change.

The separate factual scenario underlying plaintiff's second claim is found in her attached statement entitled "Intrusive Cameras" and the related grievance and response.  In the statement, plaintiff alleges that on September 9, 2012, another inmate had witnessed a male officer watching Ms. Hodge on a zoomed-in shot in her cell putting on lotion and dressing after a shower.  She claims that security cameras were placed in cells so that male guards could view her and other unsuspecting inmates "on the monitor" getting dressed and undressed and that "TCF" has been "aware of the intrusiveness of certain cameras at J cellhouse" since they were installed.  She alleges that discovering "that male officers have been able to see (her) in various stages of undress" for the entire two years that she has lived in J cellhouse is humiliating and demeaning.  Plaintiff filed a grievance dated September 14, 2012, in which she complained that "several security cameras in J cellhouse show female inmates on the monitor as they get dressed and undressed inside their rooms" and that she had been "videotaped while naked by a camera that's only supposed to show the north hallway and exit door."  On September 21, 2012, Warden Cooper responded that the cameras were reviewed on

September 18, 2012, and corrective action was immediately taken in that "blinders" were put on each camera to block out portions of affected rooms.  Cooper also referred plaintiff to General Order 15-104, which provided that "Underclothing shall be worn at all times, except when in restroom/shower facilities" and "[u]nderclothing shall be covered by clothing, towel, robe, or by other suitable means at all other times."

Plaintiff seeks money damages for "sexual harassment/staff negligence" and "intrusive camera violation."  In her Amended Complaint (Doc. 4) she baldly adds that she is "suing for punitive damages and injunctive relief."

## IV.  SCREENING

Because Ms. Hodge is a prisoner, the court is required by statute to screen her complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Nevertheless, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). Still, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To avoid dismissal, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. Having screened all materials filed under these standards, the court finds that the complaint is subject to being dismissed for reasons that follow.


**V.   IMPROPER DEFENDANTS**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The State of Kansas, the KDOC, and the TCF are not proper defendants because none is a "person" subject to suit for money damages under § 1983.

Furthermore, the State of Kansas and its agencies like the KDOC are absolutely immune to suit for money damages under the Eleventh Amendment.

## VI.  IMPROPER JOINDER OF CLAIMS

As previously noted, plaintiff's two claims are based upon entirely different factual scenarios.  While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues."[2] *Zhu v. Countrywide Realty Co., Inc.*, 160 F.Supp.2d 1210, 1225 (D.Kan. 2001)(citation omitted).  Under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

The court finds that plaintiff's claim regarding intrusive cameras is not properly joined with her other claims in this lawsuit. Plaintiff does not allege facts suggesting that any person named as

---

[2]     Fed.R.Civ.P Rule 20(a)(2) governs permissive joinder of defendants and pertinently provides:

(2) Defendants.  Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Id.  Fed.R.Civ.P. Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

defendant in this action was personally involved in the placement of the security cameras in question or her being improperly viewed on a monitor.  Nor are the two sets of facts shown to have arisen out of the same transaction, occurrence, or series of transactions or occurrences so as to allow joinder of claims despite a difference in defendants.[3]  Plaintiff's claim regarding security cameras will be dismissed from this action without prejudice unless she shows that it is not improperly joined with her first claim.  The dismissal of this claim without prejudice will not mean that Ms. Hodge cannot pursue it.  But it does mean that in order to do so, she must file a separate civil action that names as defendants those persons who actually caused her injury with the security cameras and monitors.  Plaintiff is reminded that she must satisfy the statutory filing fee

---

        3     The court makes no ruling as to the merits of this claim.  However, some possible deficiencies are noted for plaintiff's consideration should she decide to raise it in a separate lawsuit.  First, the right to privacy is clearly subject to reasonable limitations in the prison context, and security cameras are an accepted part of the prison environment.  Thus, a bald reference to privacy in a prison cell without more is insufficient.  Certainly, prison employees may not use security cameras as a means to improperly view naked inmates of the opposite sex.  Courts have held that if guards regularly watch inmates of the opposite sex who are engaged in personal activities, such as undressing, using toilet facilities, or showering, the inmates' constitutional rights to privacy are violated.  *See Cumbey v. Meachum*, 684 F.2d. 712, 714 (10th Cir. 1982).  However, plaintiff was not viewed in the shower or toilet, but in her cell.  Moreover, plaintiff's own exhibits indicate that inmates were expected to wear underclothing and another cover outside the shower area, and plaintiff's excuse for disobeying this directive is not particularly convincing.  Furthermore, plaintiff alleges that a male guard viewed her undressed on a single date.  Her allegation that she could have been watched over a two-year period is speculation.  In short, no facts are alleged showing that plaintiff was regularly viewed in an area where she was allowed to be undressed.  *See Hayes v. Marriott*, 70 F.3d 1144, 1147 (10th Cir. 1995)(an analysis of the "frequency with which prison guards watch inmates of the opposite sex undressing, using toilet facilities, and showering is an important factor in assessing the constitutionality of prison practices," although a prisoner's right to privacy may be violated by a single search under certain circumstances).  Finally, plaintiff complained through the inmate grievance procedure, and managed to get her complaint resolved.

for each separate civil complaint that she files.

## VII.  NO CLAIM AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

It is well established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir.), *cert. denied*, 513 U.S. 832 (1994).  Therefore, to the extent that the plaintiff's § 1983 claims for money damages are against state employees in their official capacities, such relief is barred by the Eleventh Amendment.  Accordingly, plaintiff's official capacity claims against employees at the TCF and the KDOC must be dismissed.

## VIII.  FAILURE TO ALLEGE PERSONAL PARTICIPATION OF EACH DEFENDANT

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants").  The U.S. Supreme Court reconfirmed this principle in

13

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009):

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  (Citations omitted). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Id.* As set forth earlier, in order to state a claim under § 1983, plaintiff must allege the violation of a right secured by the Constitution and laws of the United States.  In addition, the Tenth Circuit Court of Appeals has held "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Ms. Hodge alleges that she was subjected to sexual harassment, personal abuse, unwanted touching, and lewd acts.  However, she does not suggest that any named defendant participated in any of these acts.  The only person that is alleged to have participated in these acts is another inmate who was not a state actor.

Plaintiff's complaint with respect to the defendant KDOC and TCF employees is that they failed to properly respond when she reported the other inmate's misconduct.  She has described acts or inactions of defendants Mayo and Hull-Viera in support of her claim

that these two defendants failed to properly respond.  However, she has not adequately described the personal participation of any other defendant.  She generally describes the acts of all defendants as negligence, failure to follow PREA protocol, untimely, and unreasonable.  Her only allegations referring to defendants Ballhagen, Fischli, Cooper,[4] Burris, and Morgan in particular are nothing more than conclusory statements that they were aware and never responded.  To the extent that plaintiff's claim against any defendant is based upon the defendant's response or failure to respond to an administrative grievance, the claim fails.  This is because the denial of an administrative grievance or appeal concerning an incident that occurred prior to the filing of the grievance does not show personal participation on the part of the responding official in that prior unconstitutional conduct.  In short, Ms. Hodge does not adequately explain what defendants Ballhagen, Fischli, Cooper, Burris and Morgan did that amounted to a violation of her constitutional rights.

## IX.  FAILURE TO STATE A FEDERAL CONSTITUTIONAL CLAIM

Plaintiff makes no reference to any federal constitutional provision or federal law in her complaint.  She may believe that the U.S. Constitution was violated but simply failed to specify the

---

4    Plaintiff's own exhibits show to the contrary that defendants Cooper and Burris responded to her administrative grievances.

constitutional provision.   However, the court is not free to "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."

Plaintiff's express claim against defendants is "staff negligence."  Negligence, even by state prison employees, does not arise to a federal constitutional violation.  Simple negligence is a tort claim that must be litigated in state court.

Plaintiff also claims violations of General Orders and KDOC prison regulations.  These are matters of state law.  Violations of state law are not sufficient grounds for relief in federal court under 42 U.S.C. § 1983.

Plaintiff also fails to allege any facts to suggest how the acts or inaction of each defendant resulted in physical harm to her.  Her only claimed injuries are humiliation and feeling violated.  Under federal statutory law, an inmate may not bring a federal cause of action for mental or emotional injury absent a showing of physical injury.   42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

Plaintiff's bald statement that she had to risk her "goodtime, program and custody" is not supported by any facts showing that she actually lost any good time credit or that her program or custody classification was changed to her detriment as a result of her efforts

16

to rectify her problems with her bunkmate.

Plaintiff's claim for injunctive relief added in her Amended Complaint is nothing more than a conclusory statement. She does not indicate what needs to be enjoined, and it appears that both situations have been resolved.

Plaintiff's allegations might be liberally construed as attempting to state a claim of failure to protect under the Eighth Amendment to the United States Constitution applicable to the states through the Fourteenth Amendment. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 n. 10 (10th Cir. 1998); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Clearly, a prisoner is entitled to reasonable protection against assault by another inmate. *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489 (10th Cir. 1990). However, plaintiff has failed to allege sufficient facts to support such a claim.

A claim of failure to protect is evaluated under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976), reiterated in *Wilson v. Seiter*, 501 U.S. 294 (1991). The test for deliberate indifference under the Eighth Amendment is well established in the Tenth Circuit and has "both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component of the test is met if the harm suffered is "sufficiently serious" to implicate the Cruel and Unusual Punishment Clause. *Wilson*, 501 U.S. at 298; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy this component, the

inmate must show that she was incarcerated under conditions posing a substantial risk of serious harm.[5]  The subjective component "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'"  *Sealock*, 218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 837).  Under this component, the inmate must establish that prison officials had a sufficiently culpable state of mind in allowing the deprivation to take place.  *Wilson*, 501 U.S. at 302-03; *Reynolds*, 370 F.3d at 1031; *Verdicia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)(quoting *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001)).  To be liable for unsafe conditions of confinement the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he (or she) must also draw the inference."  *Farmer*, 511 U.S. at 837; *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).  Both components must be satisfied.  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety.*"  Whitley v. Albers*, 475 U.S. 312, 319 (1986).  "Mere negligence does not constitute deliberate indifference."  *Smith v. Cummings*, 445 F.3d

---

[5]     A sufficiently serious prison condition is one which exposes an inmate to "a substantial risk of serious harm."  *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004).  Prison conditions may be harsh and restrictive without violating constitutional rights, *Barney*, 143 F.3d at 1311, and the relevant inquiry involves a review of the "circumstances, nature, and duration" of the conditions with "the length of exposure to the conditions . . . of prime importance."  *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001).

1254, 1258 (10th Cir. 2006); *see Board of County Commissioners v. Brown*, 520 U.S. 397, 407-10 (1997)(A higher standard is required than simple negligence or heightened negligence).   Thus, negligent failure to protect inmates from assaults by other inmates is not actionable under the Eighth Amendment.   *Farmer*, 511 U.S. at 835.   An official's failure to alleviate a significant or obvious risk that she should have perceived but did not, "while no cause for commendation," does not constitute a violation of the Eighth Amendment.   *Id.* at 838.

As has been discussed, plaintiff fails to adequately describe the individual actions of all but two defendants.   She alleges no facts to establish a culpable state of mind on the part of any defendant.   Accepting the facts in the complaint as true but not the conclusory statements, the court concludes that plaintiff has not alleged sufficient facts to state a plausible federal constitutional violation against any named defendant.


**IX.   MOTION FOR APPOINTMENT OF COUNSEL**

The court has considered plaintiff's Motion for Appointment of Counsel (Doc. 3).   There is no constitutional right to appointment of counsel in a civil case.   *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995).   The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.   *Williams v. Meese*, 926 F.2d 994,

996 (10th Cir. 1991).  The burden is on the applicant to convince the court that there is sufficient merit to her claim to warrant the appointment of counsel.  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006)(*citing Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (*citing Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).  In deciding whether to appoint counsel, the court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115.  The court concludes in this case that (1) it is not clear at this juncture that plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) plaintiff appears capable of adequately presenting facts and arguments.

   **IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's Amended Complaint (Doc. 4) is construed as incorporating the original complaint (Doc. 1).

   **IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 52.00.  Any objection to this order must be filed on or before the date payment is due.  The failure to pay the fees as required herein

may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff is required to cure the deficiencies in her Amended Complaint that have been set forth herein.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Appointment of Counsel (Doc. 3) is denied, without prejudice.

**IT IS SO ORDERED**.

Dated this 16th day of November, 2012, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge